# IN THE COURT OF APPEALS OF IOWA

No. 23-0489
Filed August 9, 2023

**IN THE INTEREST OF S.C. and T.C.,**
**Minor Children,**

**T.C., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Scott County, Michael Motto, District

Associate Judge.

A father appeals the termination of his parental rights.  **AFFIRMED.**

Steven W. Stickle of Stickle Law Firm, P.L.C., Davenport, for appellant

father.

Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney

General, for appellee State.

Jennifer M. Olsen, Davenport, attorney and guardian ad litem for minor

children.

Considered by Greer, P.J., and Schumacher and Badding, JJ.

**PER CURIAM.**

In May 2021, the Iowa Department of Health and Human Services determined S.C. (born in 2017) and T.C. (born in 2019) needed to be removed from the mother's care.[1]  The department contacted the father listed on both children's birth certificates, Tr.C., who was living in Wisconsin—he verbally agreed to the children being placed with his grandmother as a safety plan but then threatened to sue the department if he could not take the children back across the state line.  With concerns the father would abscond with the children, the State successfully filed for an ex parte removal.[2]  The children were adjudicated in need of assistance (CINA) in June and placed in the paternal great-grandmother's custody under the department's supervision.  When the department became involved, the mother disclosed that Tr.C. was not S.C.'s biological father, which was confirmed by paternity testing.[3]  After a two-day termination trial, the juvenile court terminated the father's rights to both children.  He appeals that ruling.

During the pendency of the case, the father was combative and belligerent, regularly threatening to sue or kill service providers and the great-grandmother.  An in-person visit with T.C. was held in September 2022; the father arrived and, while in front of T.C., became immediately combative and only calmed when the service provider threatened to end the visit.  Other interactions the father had with

---

[1] The mother's parental rights were terminated in a prior proceeding, and she is not party to this appeal.

[2] At this point, the department knew that the father had committed domestic abuse against the mother, choking her until she passed out.  A no-contact order was in place.

[3] S.C. was placed with her biological father's sister, who was also a licensed foster parent

service providers or the court ended with similar outbursts. Due to concerns about his volatility, the department began offering visits virtually. In October, the father moved for in-person visits to occur, but following a hearing, the juvenile court denied the motion. The order provides that the motion was denied "for all the reasons stated on the record." But the transcript of the recorded hearing was not provided for our review. Virtual visits did not go smoothly either, with the father threatening to kill providers and the great-grandmother in front of T.C. As the father's behaviors escalated, T.C. became fearful and worried about being apart from his great-grandmother.

As for any progress with S.C., the department also scheduled virtual visits with the father and S.C., who was living out of state by this point; the father was directed not to refer to himself as "Dad" or "Daddy" in order to avoid confusing the child.[4] But, during the first virtual visit, the father was unable to follow this direction and the visit was ended early.

Visits were eventually suspended altogether in November, as the department noted the visits were causing "mental injury" and confusion for the children. The department's social work case manager testified the department had serious concerns about the father's control over his emotions and mental health; but, while the father was offered solutions-based casework (SBC),[5] drug testing, and a mental-health evaluation, he insisted he would only participate in visitation

---

[4] The caseworker testified S.C. had demonstrated severe behavioral issues that made this type of confusion contrary to her best interests.

[5] The father attended a few sessions, which often ended with vulgar language and threats to service providers. The case manager testified the father never demonstrated that he learned anything during the sessions.

and refused all other services. The case manager testified she attempted to contact the father monthly but either found him unreachable or, when she was able to make contact, was told to go through his attorney.[6]

A virtual assessment of the father's home was done in August 2022; the provider believed the home was appropriate. But the father has a roommate whose identity remains unknown, so the department could not determine if the roommate was an appropriate person for the children to be around.

A termination hearing was held on December 13, 2022, and February 22, 2023. The court terminated the father's rights to T.C. under Iowa Code section 232.116(1)(e) and (h) (2022) and to S.C. under section 232.116(1)(e) and (f). He now appeals, challenging whether the State made reasonable efforts toward reunification and the evidence supporting the grounds for termination.

We review a termination of parental rights de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We begin with the father's challenge of the State's efforts toward reunification. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) ("The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent."). While the father did challenge the department's efforts to the court before the termination hearing, we are unable to

---

[6] A few of the father's responses to the caseworker's emails were entered into evidence. In December 2022, when the caseworker asked the father if he would sign a release for his mental-health records, he responded, "[M]y mental health is not of your concern because that's confidentiality." In February 2023, when the caseworker asked when the father would be available for a monthly contact, the father stated he was "suing Scott County and [the department]" and told her to "[l]eave [him] the fuck alone." The juvenile court observed first-hand similar belligerent behaviors demonstrated by the father during his termination trial testimony.

review the decision because the reasoning was given orally at a hearing and a transcript of that hearing was not provided for our review. *See In re F.W.S.*, 698 N.W.2d 134, 135–36 (Iowa Ct. App. 2005) ("Without the benefit of a full record of the lower courts' proceedings, it is improvident for us to exercise appellate review."). Moreover, the father did not use the services offered to him, including SBC and a mental-health evaluation. *See In re M.P.*, No. 19-0995, 2019 WL 5063337, at *4 (Iowa Ct. App. Oct. 9, 2019) ("[T]he reasonable-efforts mandate does not create a menu from which discerning parents may order specific services. Rather, it is intended to provide services that facilitate reunification given the parent's circumstances."); *In re C.P.*, No. 18-1536, 2018 WL 6131214, at *3 (Iowa Ct. App. Nov. 21, 2018) ("The issue in this case was not the failure to provide appropriately tailored communications and services, it was [the parent's] failure to avail herself of the services provided. [The parent's] failure to use the services provided defeats her reasonable-efforts claim."). The father's challenge to the State's reasonable efforts toward reunification, then, must fail.

We turn next to the statutory grounds for termination. When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). So, we narrow our review to the common fourth element of Iowa Code section 232.116(1)(h) and (f),[7] the only element of these grounds the father challenges on appeal—whether or not the children could

---

[7] The two sections are largely similar, but section 232.116(1)(h) applies to children three years of age or younger and 232.116(1)(f) to children four years of age or older.

be returned to the father's care at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" as "at the time of the termination hearing"). Given the father's unwillingness to speak with providers, they were unable to determine basic things such as if his living situation was appropriate for the children. *See In re T.N.*, No. 23-0578, 2023 WL 4103955, at *2 (Iowa Ct. App. June 21, 2023) (recognizing that "'we do not require compliance for compliance's sake' from parents seeking reunification," but noncompliance can create roadblocks preventing safe reunification (citation omitted)). More troubling, his uncontrollable anger and mental-health concerns remain unresolved with the father showing no insight into how those behaviors impacted the children. With that lack of insight, the father refused to engage in any testing or submit to a mental health evaluation to address his "severe behaviors." As the children could not be returned to the father's care at the time of the termination hearing, we find the State proved the grounds for termination.

On our de novo review, we affirm the termination of the father's parental rights.

**AFFIRMED.**